# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| ATARI J. AMOS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:14CV63 SNLJ |
| | ) | |
| UNKNOWN STOLZER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court upon the motion of plaintiff Atari J. Amos (registration no.1130712), an inmate at Northeast Correctional Center ("NECC"), for leave to commence this action without payment of the required filing fee. For the reasons stated below, the Court finds that the plaintiff does not have sufficient funds to pay the entire filing fee and will assess an initial partial filing fee of $1.00 at this time. *See* 28 U.S.C. § 1915(b)(1). Furthermore, after reviewing the complaint, the Court will partially dismiss the complaint and will order the Clerk to issue process or cause process to be issued on the non-frivolous portions of the complaint.

## 28 U.S.C. § 1915(b)(1)

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these

monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10, until the filing fee is fully paid. *Id.*

Plaintiff has submitted an affidavit and a certified copy of his prison account statement for the six-month period immediately preceding the submission of his complaint. A review of plaintiff's account indicates an average monthly deposit of $0, and an average monthly balance of $0. Plaintiff has insufficient funds to pay the entire filing fee. Accordingly, the Court will assess an initial partial filing fee of $1.00, which is a nominal initial partial filing fee.

## 28 U.S.C. § 1915(e)

Pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court must dismiss a complaint filed in forma pauperis if the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. An action is frivolous if it "lacks an arguable basis in either law or fact." *Neitzke v. Williams*, 490 U.S. 319, 328 (1989); *Denton v. Hernandez*, 504 U.S. 25, 31 (1992). An action is malicious if it is undertaken for the purpose of harassing the named defendants and not for the purpose of vindicating a cognizable right. *Spencer v. Rhodes*, 656 F. Supp. 458, 461-63 (E.D.N.C. 1987), *aff'd* 826 F.2d 1059 (4th Cir. 1987). A complaint fails to state a claim if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To determine whether an action fails to state a claim upon which relief can be granted, the Court must engage in a two-step inquiry. First, the Court must identify the allegations in the complaint that are not entitled to the assumption of truth. *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1950-51 (2009). These include "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Id.* at 1949. Second, the Court must determine whether the complaint states a plausible claim for relief. *Id.* at 1950-51.

This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950. The plaintiff is required to plead facts that show more than the "mere possibility of misconduct." *Id.* The Court must review the factual allegations in the complaint "to determine if they plausibly suggest an entitlement to relief." *Id.* at 1951. When faced with alternative explanations for the alleged misconduct, the Court may exercise its judgment in determining whether plaintiff's conclusion is the most plausible or whether it is more likely that no misconduct occurred. *Id.* at 1950, 51-52.

## The Complaint

Plaintiff, an inmate at NECC, brings this action pursuant to 42 U.S.C. § 1983 alleging violations of his civil rights which allegedly occurred during his incarceration at the St. Genevieve County Jail.

Plaintiff seeks both monetary and injunctive relief in his complaint, and he has named defendants in both their individual and official capacities. Named as defendants are: Unknown Stolzer (Sheriff, St. Genevieve County); David Owens (Communications Director, Missouri Dept. of Corrections ("MDOC")), John Doe (Director, MDOC); Unknown Odem (Nurse, St. Genevieve County Jail); Unknown Catel (Doctor, St. Genevieve County Jail); D. Gegg (Correctional Officer, St. Genevieve County Jail); Keefe Group; R. Merz (Correctional Officer, St. Genevieve County Jail); A. Hulsey (Correctional Officer, St. Genevieve County Jail); Unknown Conrad (Correctional Officer, St. Genevieve County Jail); N. Burns (Correctional Officer, St. Genevieve County Jail); P. Kard (Sergeant, St. Genevieve County Jail); Unknown Miller (Correctional Officer, St. Genevieve County Jail); Unknown Mayfield (Correctional Officer, St. Genevieve County Jail); Unknown Del Rosario (Correctional Officer, St. Genevieve County Jail); Unknown McCaffrey (Correctional Officer, St. Genevieve County Jail); B. Berg (Correctional Officer, St. Genevieve County Jail); C. Schlenker (Correctional Officer, St.

Genevieve County Jail); St. Genevieve County Sheriff's Dept.; Unknown Van Haar (Correctional Officer, St. Genevieve County Jail); N. Ems (Correctional Officer, St. Genevieve County Jail); S. Memhardt (Correctional Officer, St. Genevieve County Jail); C. Weinhold (Correctional Officer, St. Genevieve County Jail); A. Brown (Correctional Officer, St. Genevieve County Jail); and K. Carrow (Correctional Officer, St. Genevieve County Jail).

Plaintiff first claims that defendants have refused to provide him with a halal food program, a "hardback" Qur'an, a "prayer rug" and access to religious services with an Imam, in violation of his First Amendment right to Free Exercise of Religion and in violation of his statutory rights under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc-1 *et seq.*[1] Plaintiff also claims that his rights under the Establishment Clause have been violated because other religions have an authorized clergy member on the "Authorized Clergy List," but not Muslims.

Specifically, plaintiff states that he asked defendant Kard for the aforementioned "religious accommodations," in addition to requesting an alarm clock, in order to adhere to a proper diet and prayer times for his Muslim religion. Plaintiff asserts that defendant Kard denied the request, as well as his subsequent grievance. Plaintiff also states, in a conclusory manner, that "all the defendant officers denied the request," but he never claims that the request for "religious accommodations" were made to any specific additionally named defendants.

Plaintiff asserts that the Jail has a "policy and custom" of "refusing to provide inmates with newspapers, magazines and books." However, in the next sentence of his complaint, plaintiff asserts that inmates are limited to possession of three books or magazines at any one

---

[1] Plaintiff also appears to assert a claim under the Religious Freedom Restoration Act (RFRA"), 42 U.S.C. §§ 2000bb-1, *et seq*. The RFRA was invalidated as applied to the states in *City of Boerne v. Flores*, 521 U.S. 507, 515-16 (1997). In response, Congress enacted the RLUIPA.

time. Plaintiff states that the Jail has another "policy or custom" of throwing "envelopes" from an inmates' mail away.

Plaintiff states in a conclusory manner that defendant Stolzer has a "policy and custom" of "denying contact visits to inmates and their families." However, he claims in his next sentence of his complaint that his visits with his family have been limited to ten (10) minutes at a time. Thus, it seems clear that plaintiff has been receiving visits from friends and family members.

Plaintiff complains that the Jail has a "policy and custom" of "denying inmates legal assistance . . . by refusing to install an electronic library similar to the one used in the Federal Bureau of Prisons." He also complains that the Jail refuses to provide him postage stamps and envelopes and paper free of charge. He further states that the Jail has a "policy and custom" of failing to provide "nutritious meals."

Plaintiff also alleges that the food is often cold or not cooked to the specifications he believes it should be held to, and he states, in a conclusory manner, that the Jail doesn't provide "adequate clothing" to the inmates.[2] Plaintiff additionally complains that although inmates are given a "hygiene bag" when they enter the Jail, after they use the soap, shampoo, toothbrush and toothpaste in the bag, they have to buy their additional hygiene items from the commissary, if they have funds to do so. Plaintiff believes the Jail should have to provide hygiene items free of charge, regardless of their ability to pay.

Plaintiff asserts that the Jail also has "algae and mold" growing in various places on its walls, and he claims that the inmates are asked to wipe down the walls with "watered down detergent." He believes this exposes the inmates to harm, although he has not specific the harm

---

[2] Plaintiff states that each inmate is provided with two full changes of clothing, which consists of two shirts, two pairs of pants and two pairs of boxer shorts. There is nothing in plaintiff's facts to indicate why he believes the clothing allowance to be inadequate.

to which he refers. Plaintiff additionally complains, in a conclusory manner, about the faulty ventilation system at the Jail, stating that it is old and isn't kept properly maintained. He asserts, also in a conclusory manner, that the Jail is "overcrowded," and he claims that the "recreation run" offered at the Jail is "small, moldy, hot and devoid of air and sunlight."

Plaintiff additionally asserts that the Jail, in conjunction with "Keefe Group," the Director of MDOC and defendant Owens, "conspired to deprive inmates of the money in their inmate accounts" by "illegally charging inmates sales tax on commissary purchases."

Last, plaintiff asserts that the Jail has a "policy and custom" of depriving inmates of medical and dental care. He claims, in a conclusory manner, that he has requested to see a doctor/nurse for a "variety of issues but has been delayed or denied."

### Discussion

**A.    Plaintiff's Claims Under the RLUIPA State a Claim against Defendant Kard in His Official Capacity But Otherwise Fail to State a Claim for Relief**

The Religious Land Use and Institutionalized Persons Act provides, in relevant part:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person --
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.
>
> 42 U.S.C. ' 2000cc-1(a).

"The Act defines 'religious exercise' to include 'any exercise of religion, whether or not compelled by, or central to, a system of religious belief.'" *Cutter v. Wilkinson*, 544 U.S. 709, 715 (2005)(quoting 42 U.S.C. ' 2000cc-5(7)(A)). "'A person may assert a violation of [RLUIPA] as a

claim or defense in a judicial proceeding and obtain appropriate relief against a government.'" *Id*. at 716 (quoting 42 U.S.C. ' 2000cc-2(a)).

Having carefully reviewed the complaint, the Court finds that plaintiff has stated an RLUIPA claim against defendant Kard in his official capacity[3], with regard to his claims for damages.[4] Plaintiff has failed to make specific RLUIPA claims against any of the other named defendants in this action; rather, any such allegations against the other defendants are made up of conclusory statements only or sound in respondeat superior. As such, process shall issue as to only defendant Kard on plaintiff's RLUIPA claims.

B.   **Plaintiff's 42 U.S.C. 1983 Claims under the Free Exercise Clause of the First Amendment State a Claim against Defendant Kard**

Plaintiff claims that defendant Kard violated his rights under the Free Exercise Clause of the First Amendment.[5] While prisoners retain their constitutional rights, they are subject to limitations on those rights "in light of the needs of the penal system." *Murphy v. Mo. Dep't of Corr.,* 372 F.3d 979, 982 (8th Cir.2004), *cert. denied,* 543 U.S. 991 (2004). An inmate's constitutional claims are evaluated under a lesser standard of scrutiny, even though such claims would receive strict scrutiny analysis if brought by a member of the general population. *Id.* "A prison regulation or action is valid, therefore, even if it restricts a prisoner's constitutional rights

---

[3] Naming a government official in his or her official capacity is the equivalent of naming the government entity – St. Genevieve County - that employs the official. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Plaintiff's individual capacity claims against the remaining defendants, as well as defendant Kard, under RLUIPA will be dismissed, however, as the statute does not allow for claims against individuals. *Blake v. Cooper,* 2013 WL 523710, *1 (W.D.Mo. Feb. 12, 2013); *Waff v. Reisch,* No. Civ. 07–4166, 2010 WL 3730114, *11 (D.S.D. July 30, 2010)("RLUIPA does not authorize individual capacity claims against prison officials."); *Van Wyhe v. Reisch,* 536 F.Supp.2d 1110, 1118 (D.S.D.)(same), *aff'd in part, rev'd in part on other grounds,* 581 F.3d 639 (8th Cir.2009).

[4] Plaintiff's claims for injunctive relief are moot, as he is no longer housed at the St. Genevieve County Jail. *See Zajrael v. Harmon*, 677 F.3d 353 (8th Cir. 2012).

[5] A prisoner's claim under RLUIPA is evaluated under a different standard than a First Amendment claim. "By enacting RLUIPA, Congress established a statutory free exercise claim encompassing a higher standard of review than that which applies to constitutional free exercise claims." *Murphy*, 372 F.3d at 987 (8th Cir. 2004).

if it is 'reasonably related to legitimate penological interests.' " *Id.* (quoting *Turner v. Safley,* 482 U.S. 78, 89, (1987)).

The Court finds that plaintiff has stated a First Amendment § 1983 claim against defendant Kard in his individual capacity.[6] However, plaintiff has failed to assert any facts indicating that the remaining defendants were directly involved in or personally responsible for the violation of plaintiff's First Amendment Free Exercise rights. Thus, the Court will dismiss the First Amendment Free Exercise Claims against the remaining defendants.

> **C. Plaintiff's 42 U.S.C. § 1983 Claims Under the Establishment Clause of the First Amendment Fail to State a Claim for Relief**

The Establishment Clause of the First Amendment prohibits governments from making any laws "respecting an establishment of religion." Under this clause, "[i]t is beyond dispute that, at a minimum, the Constitution guarantees that government may not coerce anyone to support or participate in religion or its exercise, or otherwise act in a way which establishes a state religion or religious faith, or tends to do so." *Lee v. Weisman*, 505 U.S. 577, 587 (1992). Although there is some question as to what the proper test is for determining whether the Establishment Clause has been violated in different contexts, *see, e.g., Tangipahoa Parish Bd. of Educ. v. Freiler*, 530 U.S. 1251 (2000) (Scalia, J., dissenting from denial of cert.), it appears that the Eighth Circuit employs the *Lemon* test, under which a challenged practice will be upheld only if "(1) it has a secular purpose; (2) its principal or primary effect neither advances nor inhibits religion; and (3) it does not foster an excessive entanglement with religion." *ACLU Neb. Found. v. City of Plattsmouth, Neb.*, 419 F.3d 772, 775 (8th Cir.2005) (citing *Lemon v. Kurtzman*, 403 U.S. 602, 612-13 (1971)).

---

[6] Plaintiff's claims under the Free Exercise Clause against defendant Kard in his official capacity fail to state a claim, as he has not alleged that he was denied "religious accommodations" pursuant to an official County policy or custom.

As the Seventh Circuit has explained, the *Lemon* test is directed primarily at those situations in which the government has allegedly acted to assist an existing religious group, such as where local governments permit religious monuments on public lands, and it therefore is not a perfect fit for claims, such as plaintiff's, as plaintiff does not appear to be alleging that a government actor is "coercing him or her to subscribe to religion generally, or to a particular religion." *Kerr v. Farrey,* 95 F.3d 472, 478-79 (7th Cir.1996).

Given that plaintiff has not articulated any "coercion" on behalf of defendants, his claims under the Establishment Clause will be dismissed. *See, e.g., Strutton v. Meade*, No. 4:05CV2022 ERW, 2010 WL 1253715, (E.D.Mo. March 31, 2010).

### D. Plaintiff's Allegations under 42 U.S.C. § 1983 Against the Remaining Individual Defendants Are Conclusory and Are Not Entitled to An Assumption of Truth

Although civil rights pleadings should be construed liberally, at the very least, however, the complaint must contain facts which state a claim as a matter of law and must not be conclusory. *Frey v. City of Herculaneum*, 44 F.3d 667, 671 (8th Cir. 1995). Like the complaint in *Ashcroft v. Iqbal*, which alleged that supervisory officials "knew of, condoned, and willfully and maliciously agreed to" subject the plaintiff to harsh conditions for an illegitimate reason, plaintiff's conclusory allegations against the individual defendants in the instant complaint are conclusory, and they are not entitled to a presumption of truth. 129 S. Ct. at 1951.

The instant complaint asserts a plethora of conclusory allegations against the named defendants in this action that fail to reach a level of plausibility needed to state a claim under *Iqbal*. Plaintiff asserts that no less than twenty-five (25) defendants have subjected him to numerous violations of his civil rights and insists that his handwritten, almost thirty-page complaint, which is largely devoid of specific factual allegations, brought against correctional officers and supervisors and corporate defendants, alike, should be enough to hold each and

every one of those defendants responsible for every one of the alleged injustices he has taken the time to spell out for this Court. Unfortunately, plaintiff's complaint does not suffice to properly allege that the actions were known to the particular supervisory officials named as defendants, *see Wilson v. City of N. Little Rock*, 801 F.2d 316, 323 (8th Cir. 1986), and it assuredly does not plead adequately that the supervisors acted with the impermissible purpose as required by *Iqbal*. *See Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995) ("a general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability.").

As noted above, supervisors, such as Sheriff Stolzer, cannot be held vicariously liable under § 1983 for the actions of a subordinate. *See Iqbal*, 129 S. Ct. at 1948. To state a claim, the plaintiff must plead that the supervising official, <u>through his own individual actions</u>, has violated the Constitution. *Id*. Where, as here, the alleged constitutional violation requires proof of an impermissible motive, the complaint must allege adequately that the defendant acted with such impermissible purpose, not merely that he knew of a subordinate's motive. *Id*.

Plaintiff's allegations against all of the remaining defendants, except for those set forth above against defendant Kard, are nothing more than a "[t]hreadbare recital[] of a cause of action's elements" and are not entitled to an assumption of truth. *Iqbal*, 129 S. Ct. at 1949. Because there are no <u>non-conclusory allegations</u> that would show that the supervisory defendants ordered the correctional officers to impinge upon plaintiff's constitutional rights, the complaint "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Twombly*, 550 U.S. at 557; *Iqbal*, 129 S. Ct. at 1949.

Additionally, plaintiff's allegations that defendants acted with an impermissible purpose is not the most plausible conclusion in light of the fact that he has taken the time to name twenty-five (25) defendants in an almost thirty-page handwritten complaint, including a myriad of

claims for relief, but without ever spelling out exactly how his rights have been violated. *C.f. Iqbal*, 129 S. Ct. at 1950, 1951-52.

In short, plaintiff has failed to make direct allegations against the majority of the named defendants in this action. "Liability under § 1983 requires a causal link to, and direct responsibility for, the alleged deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990); *see also Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (claim not cognizable under § 1983 where plaintiff fails to allege defendant was personally involved in or directly responsible for incidents that injured plaintiff); *Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995) (respondeat superior theory inapplicable in § 1983 suits). In the instant action, plaintiff has not set forth any facts indicating that the majority of the named defendants were directly involved in or personally responsible for the alleged violations of his constitutional rights. As a result, the complaint fails to state a claim upon which relief can be granted with respect to the following defendants: Sheriff Stolzer; David Owens; John Doe Director of MDOC; Unknown Odem; Unknown Catel; D. Gegg; R. Merz; A. Hulsey; Unknown Conrad; N. Burns; Unknown Miller; Unknown Mayfield; Unknown Del Rosario; Unknown McCaffrey; B. Berg; C. Schlenker; Unknown Van Haar; N. Ems; S. Memhardt; C. Weinhold; A. Brown; and K. Carrow.

**E.     Plaintiff's Claims against the St. Genevieve County Sheriff's Department are Legally Frivolous under 42 U.S.C. § 1983**

Plaintiff's claims against the St. Genevieve County Sheriff's Department are legally frivolous because the Sheriff's Department is not a suable entity. *Ketchum v. City of West Memphis, Ark.*, 974 F.2d 81, 82 (8th Cir. 1992) (departments or subdivisions of local government are "not juridical entities suable as such."). Moreover, although plaintiff has not named St. Genevieve County as a proper defendant in this action, the Court will note that his claims brought pursuant to § 1983, as stated in his complaint, do not suffice to state a claim against the County, either.

Although a municipality, or County government, is not entitled to absolute immunity in § 1983 actions, it cannot be held liable under a respondeat superior theory. *See Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). Municipal liability cannot be imposed absent factual allegations that unlawful actions were taken pursuant to a municipality's unconstitutional policy or custom. *Id*. at 694; *see also Iqbal*, 129 S. Ct. at 1950-51 (legal conclusions and threadbare recitals of the elements of a cause of action that are supported by mere conclusory statements are not entitled to the assumption of truth). Plaintiff's bald claims that the twenty-five named defendants "supported the policy and custom" of various individuals connected with the St. Genevieve County Sheriff's Department are wholly conclusory and insufficient to state a claim under § 1983.[7]

### F. Plaintiff's Allegations of Deliberate Indifference to His Medical Needs Fail to State a Claim Upon Which Relief May be Granted

To state a claim for medical mistreatment, plaintiff must plead facts sufficient to indicate a deliberate indifference to serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Camberos v. Branstad*, 73 F.3d 174, 175 (8th Cir. 1995). "A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Id.* at 176.

---

[7] A "policy" is an official policy, a deliberate choice of a guiding principal or procedure made by the municipal official who has final authority regarding such matters. Plaintiff has not identified an official policy that arguably played a role in the denial of his constitutional rights. A "custom" is a persistent widespread pattern of unconstitutional conduct of which officials have notice and subsequently react with deliberate indifference or tacit authorization. *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999). The elements of a cause of action pursued under the "custom" theory are: (1) the existence of a continuing wide spread persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policy making officials after notice to the officials of that misconduct; and (3) the plaintiff's injury by acts pursuant to the governmental entity's custom, *i.e.* proof that the custom was the moving force behind the constitutional violation. *Id.* Plaintiff has failed to allege any facts that show a municipal, or county, custom in this case. Additionally, all of the alleged "policy or custom" claims alleged by plaintiff are actually individual acts by unnamed defendants.

In order to show deliberate indifference, plaintiff must allege that he suffered objectively serious medical needs and that defendants actually knew of but deliberately disregarded those needs. *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997). Plaintiff has failed to allege that he suffered from a serious medical need and that a specific named defendant in this action knew of that need but deliberately disregarded it. As such, plaintiff's deliberate indifference claims, brought pursuant to the Eighth Amendment, will be dismissed.

### G. Plaintiff Has Failed to State A First Amendment Access to Courts Claim

To the extent that plaintiff is attempting to assert an access-to-the-courts claim with regard to his assertion that the Jail has a "policy and custom" of denying legal assistance by refusing to install an electronic library and failing to provide him envelopes, paper and postage stamps free of charge, the complaint is legally frivolous. Plaintiff does not claim that he has suffered "actual prejudice with respect to contemplated or existing litigation." *See Lewis v. Casey*, 518 U.S. 343, 348 (1996). Accordingly, he cannot assert an access to courts claim.

### H. Plaintiff Has Failed to Allege a Violation of the First Amendment with Regard to the Restrictions Placed on Newspapers and Magazines at the Jail

Plaintiff states, in a conclusory fashion, that there are regulations in place that limit the amount of newspapers, magazines and books provided to prisoners at the Jail. In his complaint he first states that there is a "policy or custom" of denying inmates newspapers, magazines and books. However, later in his complaint, he admits that inmates are allowed to possess three books or magazines at any one time.

Prison regulations are permissible if they are reasonably related to legitimate penological interests and are not an exaggerated response to such objectives. *Beard v. Banks*, 548 U.S. 521, 528 (2006). Substantial deference is to be given to the professional judgment of prison administrators. *Id*. The factors to be considered in determining the reasonableness of a prison regulation are set forth by *Turner v. Safley*, 482 U.S. 78, 89-90 (1987). First, is there a valid

rational connection between the prison regulation and the legitimate governmental interest put forward to justify it? *Id*. Second, are there alternative means of exercising the right that remain open to inmates? *Id*. Third, what will be the impact of accommodating the fundamental right on guards and other inmates and on the allocation of prison resources generally? *Id.* Fourth, are there ready alternatives available for furthering the governmental interest? *Id*.

In *Beard v. Banks*, the Supreme Court found that there was no constitutional violation when a Pennsylvania prison restricted access to certain newspapers and magazines during the inmates' disciplinary confinement. *See Beard*, 548 U.S. at 534 (holding policy of Pennsylvania Department of Corrections restricting access to newspapers, magazines, and photographs by inmates placed in most restrictive level of prison's segregation unit was not a violation of the First Amendment); *see also, Wardell v. Duncan*, 470 F.3d 954 (10th Cir.2006) (summary judgment granted in favor of prison officials regarding First Amendment challenge to prison policy requiring prisoners to purchase all hobby materials, legal materials, books and magazines from their prison accounts and prohibiting gifts to prisoners of such materials). As such, given the conclusory allegations contained in plaintiff's complaint, the Court cannot say that plaintiff has stated a claim in this instance.

### I. Plaintiff's Allegations of "Over-Taxation" of Commissary Goods Fail to State a Claim Under § 1983

As to the merits of plaintiff's claims relative to the alleged over-pricing and taxation of prison commissary items, the Court will dismiss these claims as legally frivolous, because these claims simply are not cognizable under § 1983 against either the County, the Jail or Keefe Group. *See Schmidt v. City of Bella Villa*, 557 F.3d 564, 571 (8th Cir. 2009) (to state a claim under § 1983, plaintiff must allege that (1) defendant acted under color of state law, and (2) defendant's alleged conduct deprived plaintiff of a constitutionally-protected federal right).

"Commissary prices implicate no constitutional right . . . [A prisoner has] no constitutionally protected interest in commissary privileges or commissary prices and, certainly, no legal basis for demanding that he be offered commissary items tax-free." *Poole v. Stubblefield*, 2005 WL 2290450, at *2 (E.D. Mo. Sept. 20, 2005); *see also Bright v. Thompson*, 2011 WL 2215011, at *4 (W.D. Ky. June 6, 2011) (inmate has no federal constitutional right to purchase items from a commissary at a certain price and without tax); *Vega v. Rell*, 2011 WL 2471295, at *25 (D. Conn. June 21, 2011) (inmates have no constitutional right to purchase items from a prison commissary, and the Court can discern no federal law that is violated by requiring inmates to pay state sales tax on their purchases); *Boyd v. Lasher*, 2010 WL 444778, at *2 (E.D. La. Feb. 8, 2010) (inmate's claims of being overcharged for commissary purchases and taxed without representation fail to state a claim of violation of constitutional rights cognizable under § 1983); *Verrette v. Randolph*, 2009 WL 103715, at *9 (E.D. La. 2009) (collection of state taxes on prison commissary purchases does not violate plaintiff's constitutional rights); *Tolbert v. City of Montgomery*, 2008 WL 819067, at *1 (M.D. Ala. Mar. 25, 2008) (inmates have no constitutionally-protected interest in purchasing goods available through the prison commissary, let alone a protected interest in not paying the tax associated with making purchases; such a claim is "patently absurd"); *McCall v. Keefe Supply Co.*, 71 F.App'x 779, 780 (10th Cir. 2003) (inmate's claim that commissary charged outrageous prices failed to state a constitutional claim); *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974) ("[T]he fact that prisoners retain rights under the Due Process Clause in no way implies that these rights are not subject to restrictions imposed by the nature of the regime to which they have been lawfully committed.").

Similarly, to the extent plaintiff is arguing that charging sales tax on prison commissary purchases violates Missouri law, his assertion also fails to state a § 1983 claim. Section 1983 provides relief for invasions of rights protected under federal law. *See Richard v. Cupp*, 2009

WL 840218, at *5 (W.D. La. Mar. 25, 2009) (prisoner's contention that commissary's collection of sales tax violates Louisiana law fails to state a claim for which relief may be granted under § 1983); *Williams v. Hopkins*, 130 F.3d 333, 337 (8th Cir. 1997) (alleged violation of state law does not by itself state claim redressable by § 1983 action); *Bagley v. Rogerson*, 5 F.3d 325 (8th Cir. 1993) (allegation of state law violation, statutory or decisional, does not, in itself, state claim under federal Constitution or § 1983).

To the extent that plaintiff asserts a "conspiracy"[8] claim related to his underlying claims of "unlawful tax on his commissary goods," these claims are also subject to dismissal. As plaintiff has failed to allege a constitutional violation, his conspiracy claims, which are supplemental to his constitutional claims, also fail to state a claim for relief. Additionally, the Court notes that plaintiff has failed to allege a "meeting of the minds" concerning the purported unconstitutional conduct. *See Mershon v. Beasely*, 994 F.2d 449, 451 (8th Cir. 1993).

### J. Plaintiff's Assertions that Defendants Acted Unlawfully by throwing the Envelopes From An Inmate's Mail Away Fails to State a Constitutional Violation

Plaintiff alleges, in a conclusory fashion, that defendants' "policy" of throwing the envelopes away that an inmate's mail came in constitutes a violation of his constitutional rights. The Supreme Court has recognized that "[i]nmates clearly retain protections afforded by the First Amendment." *O'Lane v. Estate of Shabazz,* 482 U.S. 342, 348 (1987). The addressee as well as the sender of direct personal correspondence is protected by the First Amendment against unjustified governmental interference with communication. *Procunier v. Martinez,* 416 U.S. 396, 408-09 (1974) (citing *Lamont v. Postmaster General,* 381 U.S. 301 (1965)). The Court determines the constitutionality of prison staff's scrutiny of incoming and outgoing non-legal

---

[8] Plaintiff refers to this as a "RICO Conspiracy" claim.

mail[9] by evaluating whether "the regulation [is] reasonably related to a legitimate penological interest." *Thongvanh v. Thalacker,* 17 F.3d 256, 258-59 (8th Cir.1994).

Plaintiff has not alleged that defendants' actions of throwing the envelopes away have in some way interfered with his receipt of his mail or his ability to communicate with outside parties. Nor has plaintiff alleged that his free speech rights have been impeded by defendants' acts. Thus, the Court finds that plaintiff has not properly alleged a violation of his constitutional rights with respect to this claim.

### K. Plaintiff's Allegations Relating to His Purported Unlawful Conditions of Confinement Fail to State A Claim for Relief

Plaintiff's conclusory and generalized allegations regarding what he believes to be unlawful conditions of confinement are subject to dismissal for failure to state a claim upon which relief may be granted.

In order to establish an unlawful conditions of confinement claim in violation of the 8th Amendment, a plaintiff must allege that he has been subjected to "extreme" deprivations and been denied "minimal civilized measure of life's necessities." *See Hudson v. McMillian*, 112 S.Ct. 995, 999-1000 (1992); *Howard v. Adkinson*, 887 F.2d 134, 137 (8th Cir. 1989); *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). The focus in a "conditions of confinement" case often falls on the length of exposure to the purported unsanitary conditions and the level of alleged filthiness the inmate was supposedly exposed to. *See Owens v. Scott County Jail*, 328 F.3d 1026, 1027 (8th Cir. 2003); *Whitnack v. Douglas County*, 16 F.3d 954, 957 (8th Cir. 1994) (length of time required for conditions to be unconstitutional decreases as level of filthiness increases).

---

[9] The First Amendment affords greater protection to an inmate's confidential communications between himself and his counsel of record. *See Foster v. Helling,* 210 F.3d 378 (8th Cir.2000) ("Prisoners retain their First Amendment rights of sending and receiving mail, and prison officials may not read inmates' legal mail." (citing *Thongvanh v. Thalacker,* 17 F.3d 256, 258-59 (8th Cir.1994)). Plaintiff has not indicated that this alleged "policy" effects legal mail sent to him by his attorney, thus, the Court presumes plaintiff is referring to non-legal mail.

Plaintiff's allegations that he doesn't believe the meals being served by the Jail are nutritious enough or that the food is "often cold" or "not cooked to specifications" are too conclusory to state a claim for relief. Similarly, his claims that: (1) the ventilation system at the Jail is "old and faulty;" (2) that there is "algae and mold" growing in various places in the Jail which the inmates are made to clean with "watered down detergent;" and (3) that the Jail is "overcrowded" with a poorly cleaned and poorly ventilated recreation run are too conclusory and generalized to state a claim and are not connected to any unlawful actions allegedly taken by one particular defendant. Simply put, plaintiff's nonspecific claims lack any detailed accompanying information, other than his bald legal conclusions that such conditions are unlawful. Just like the allegations in *Iqbal*, plaintiff's assertions are nothing more than a "[t]hreadbare recital[] of a cause of action's elements" and are not entitled to an assumption of truth. *Iqbal*, 129 S. Ct. at 1949.

Additionally, plaintiff's assertions that inmates should never be required to pay for their own hygiene items fails to state a claim for relief. Plaintiff states that each inmate is given a "hygiene bag" when they enter the Jail, but after they use the shampoo, soap, toothbrush and toothpaste in the hygiene bag, they are required to buy their hygiene items from the commissary. He acknowledges that an inmate who does not have sufficient funds to pay for a hygiene bag is still entitled to order one per month from the commissary, but he complains that the inmate will be charged a "debt balance." Thus, plaintiff believes that all inmates should be given hygiene items free of charge.

It is true that the Eighth Amendment's requirement that "humane conditions of confinement" be provided by prison officials, see *Farmer v. Brennan,* 511 U .S. 825, 832 (1994), "include[s] provision for basic hygiene." *Whittington v. Ortiz,* 307 Fed. Appx. 179, 186 (10th Cir. Jan. 13, 2009) (unpublished op.) (citing *Penrod v. Zavaras,* 94 F.3d 1399, 1406 (10th

Cir.1996)). And "a long-term, repeated deprivation of adequate hygiene supplies violates inmates' Eighth Amendment rights." *Myers v. Hundley,* 101 F.3d 542, 544 (8th Cir.1996). Moreover, policies forcing prisoners to choose between pursuing their legal rights and having hygienic products violate the Eighth Amendment. *See Whittington,* 307 Fed. Appx. at 189; *Keenan v. Hall,* 83 F.3d 1083, 1091 (9th Cir.1996).

However, plaintiff cannot state a claim for relief for "having to pay for hygiene items" because he has not asserted that he cannot pay for his own hygiene items or even alleged that by using his account funds to pay for hygiene items, his access to courts or some other constitutional requirements have been interfered with.

In light of the aforementioned, the claims for unlawful conditions of confinement will be dismissed at this time.

### L. Plaintiff's State Law Allegations for Intentional Infliction of Emotional Distress Fail to State A Claim

Plaintiff has alleged a state tort claim for intentional infliction of emotional distress that will also be dismissed at this time. First, plaintiff has failed to link his claim for intentional infliction of emotional distress to any particular defendant. Further, "to state a claim for intentional infliction of emotional distress, a plaintiff must plead extreme and outrageous conduct by a defendant who intentionally or recklessly causes severe emotional distress that results in bodily harm." *Gibson v. Brewer,* 952 S.W.2d 239, 249 (Mo.1997). Plaintiff has not pleaded that one of the alleged defendants subjected him to "extreme and outrageous conduct that resulted in bodily harm." As such, his claim is subject to dismissal.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to proceed in forma pauperis [Doc. #2] is **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiff shall pay an initial filing fee of $1.00 within thirty (30) days of the date of this Order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that if plaintiff fails to pay the initial partial filing fee within thirty (30) days of the date of this Order, then this case will be dismissed without prejudice.

**IT IS FURTHER ORDERED** that the Clerk shall issue process or cause process to issue upon the complaint as to defendant Kard in his official and individual capacities, according to the RLUIPA and First Amendment claims outlined above.

**IT IS FURTHER ORDERED** that, pursuant to 42 U.S.C. § 1997e(g)(2), defendant Kard shall reply to plaintiff's claims within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that the Clerk shall not issue process or cause process to issue upon the complaint as to the remaining defendants or on the remaining claims contained in plaintiff's complaint because, as to these defendants and claims, the complaint is legally frivolous or fails to state a claim upon which relief can be granted, or both.

**IT IS FURTHER ORDERED** that this case is assigned to Track 5B: Prisoner Standard.

An Order of Partial Dismissal will accompany this Memorandum and Order.

Dated this 18th day of November, 2014.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE